BUSTER NORTHERN V. THE STATE.

No. 23553. Delivered May 21, 1947.
Rehearing Denied June 28, 1947.

GRAVES, Judge, dissenting.

*A. S. Baskett, Noah Roark, Bowen Tatum,* and *W. L. Sessions,* all of Dallas, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is murder. The punishment assessed is death.

Appellant brings forward three complaints upon which he relies for a reversal of the judgment. In view of the disposition we are making of this case, we deem it necessary to discuss only his first complaint by which he challenges the sufficiency

of the indictment which, omitting the formal parts, reads as follows:

"* * * That one BUSTER NORTHERN on the 27th day of March, in the year of our Lord One Thousand Nine Hundred and 46 with force and arms, in the County and State aforesaid, did then and there unlawfully, voluntarily, and with his malice aforethought, kill Fannie McHenry by then and there kicking and stomping the said Fannie McHenry, etc."

His main contention is that the indictment fails to charge the means by which the alleged murder was committed. In this respect, we agree. It seems to have been the holding of this Court in many cases that the means by which the offense was committed, if known, should be stated; and if not known, it should be charged that the same were unknown to the grand jury.

It is now the established rule in this State that an indictment should be so certain and definite in charging the offense that it leaves nothing to be supplied by intendment or inference. Applying this rule to the indictment in the instant case, it fails to meet the requirements of the rule stated. It is true that it charges the time, place and manner of the commission of the offense, but it fails to charge the means employed in the commission of the same.

This court has held many times an indictment is insufficient which charged that the accused killed the deceased with a sharp instrument without charging the kind or character of the instrument employed. Drye v. State, 14 Tex. App. 185 (191), Jackson v. State, 34 Tex. Cr. R. 38.

This Court has also held that charging the accused with killing the deceased by shooting him was insufficient in that it failed to charge that he did so with a gun. In other words, the means employed in the commission of the offense must be charged, if known, in order to apprise the accused, not only of the time, place, and manner of the commission of the offense, but also of the means used in the commission thereof.

Long before this Court was established and while the Supreme Court of this State had appellate jurisdiction of criminal cases, the question here under consideration was frequently before that Court and it consistently held that the indictment had to charge the means by which the offense was committed.

See Williams v. State, 36 Tex. 352. If the offense was committed with a weapon or other instrument, it had to allege the kind and character of the weapon or instrument used, or aver that it was unknown to the grand jury. This is in consonance with the constitutional requirement that the accused be informed of the offense with which he is charged. It is urged as a reason for affirmance of this case that, inasmuch as one could only kick and stomp with his foot, the instrument or means used in the commission of the offense may be inferred.

We have been unable to find any case so holding, and no text-writer on criminal law, so far as we know, has ever announced such doctrine. To so hold would be a radical departure from the rules of pleading in criminal cases. The constitutional requirement that the accused be informed of the nature of the offense with which he is charged is mandatory. The Legislature as well as the Courts have been rather zealous in framing rules of procedure which would guarantee to the accused this constitutional provision. It might be conceded that the indictment in the instant case informed him that he stomped the deceased to death from which it may be inferred that he did so with his feet since no one can stomp with anything but his feet, but to do so would require the Court to supply by inference something not alleged.

It must be borne in mind that the theory of our law is that every person is presumed to be innocent and it is upon this theory of our law that it is necessary to charge the offense with such certainly that a presumptively innocent man seeking to know what he must meet may ascertain from the indictment fully the matters charged. If we proceed upon the theory that every person accused of an offense is guilty, then it may not be necessary to charge the offense with the same particularity because being presumed guilty, he would necessarily know what he did, what he is charged with, and what he will be required to meet on his trial, but this would be contrary to the Constitution and our form of government. It would have been an easy matter to have alleged in the indictment that the accused stomped the deceased to death with his feet with shoes on since the grand jury had that information when the indictment was drawn. In support of the conclusion here expressed we refer to the following authority: Huddleston v. State, 70 Tex. Cr. R. 260.

Having reached the conclusion that the indictment is fatally defective with respect to the omission herein pointed out, the

judgment of the trial court is reversed, the cause is remanded and the prosecution ordered dismissed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

GRAVES, Judge (dissenting).

Appellant is charged with taking the life of Mrs. Fannie McHenry, a woman 70 years of age, and upon his conviction, he was awarded the penalty of death.

Appellant brings forward three complaints upon which he relies for a reversal of the judgment. By his first complaint he challenges the sufficiency of the indictment which, omitting the formal parts, reads in substance as follows:

"* * * That BUSTER NORTHERN on the 27th day of March, in the year of our Lord One Thousand Nine Hundred and 46 with force and arms, in the County and State aforesaid, did then and there unlawfully, voluntarily, and with his malice aforethought, kill Fannie McHenry by then and there kicking and stomping the said Fannie McHenry", etc.

His main contention seems to be that the indictment fails to charge the means by which the alleged murder was committed. While it is true that ordinarily an indictment should charge the manner and means in which the injuries were inflicted which resulted in death, still Article 405, C. C. P., provides as follows:

"An indictment shall be deemed sufficient which charges the commission of the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged, and enable the court, on conviction, to pronounce proper judgment", etc.

Article 398, C. C. P., provides as follows:

"The certainty required in an indictment is such as will enable the accused to plead the judgment that may be given upon it in bar of any prosecution for the same offense."

It is obvious that the allegations in the indictment inform the appellant of the time and place of the commission of the

offense, as well as the manner in which it was committed. The fact that he did so by "kicking and stomping" necessarily includes the means, since he could not have kicked and stomped her with anything except his feet. In no other manner could he have kicked and stomped her.

In construing an indictment, it must be given a reasonable and not an unreasonable construction. What other information could have been conveyed by the indictment to the appellant than that he kicked and stomped her with his feet? However, it would have been an easy matter to have charged that he killed her by kicking and stomping her with his feet with his shoes on, but under the facts here disclosed, we see no escape from the conclusion that when he kicked and stomped her, it necessarily means that he kicked and stomped her with his feet, thus informing him, not only of the manner, but also of the means or the overt act by which he committed the offense.

Webster's International Dictionary (2d Ed.) defines the work "kick" to mean "a blow with foot or feet; a striking or thrust with the foot." The word "stomp" is defined as a variation of the word "stamp", the word "stamp" being defined, among other things, as "to strike or beat forcibly with the bottom of the foot, or by thrusting the foot downward."

We then, in the light of the statute, (Art. 405, C. C. P.) find this indictment saying that appellant killed this lady by blows with his foot or feet, by a striking thrust with his feet; and by striking and beating her forcibly with the bottom of his feet, and by thrusting his feet downward upon her.

Under Art. 398, C. C. P., above quoted, it has been held that an indictment is sufficient if the constituent elements of the offense are so averred as to apprise the defendant of the charge against him and to enable him to plead the judgment in bar of another prosecution for the same offense. See Burck v. State, 132 Tex. Cr. R. 628, 106 S. W. (2d) 709; Gilliam v. State, 145 Tex. Cr. R. 242, 167 S. W. (2d) 528. See also Vernon's Ann. Tex. C. C. P., Vol. 1, Art. 398, p. 264, note 2, where many cases are collated, beginning with Williams v. State, 1 Tex. App. 90, 28 Am. Rep. 399, and on up to the present time. See Paschal's Digest, Art. 2865; Alexander v. State, 29 Tex. App. 495; The State v. Hanson, 23 Tex. App. 233.

Let us suppose for the sake of argument that were we to hold the present indictment insufficient in that the method by

which Mrs. McHenry was killed was not set forth sufficiently in the indictment and the pleader was again called upon to word a further bill, he could only say that appellant had taken her life by kicking her with his foot and by stomping her with his foot. If, in the event it became possible that he should have another and further indictment found against him again charging him with the killing of Mrs. McHenry, could he not successfully say, "I have been tried once for causing her death by kicking and stomping her, and this additional charge of kicking with my feet and stomping with my feet is one and the same charge that I have heretofore been called to answer?"

We are herein cited to the decision of this court in the case of Gragg v. State, 186 S. W. (2d) 243, in which we held that an allegation that one "drowned" a person was insufficient notice as to how such act of drowning took place, as well as in what manner such drowning was had; that no overt act was alleged, and because of there being more than one means by which the drowning may be accomplished, the indictment did not inform the accused with sufficient accuracy of the offense for which he was charged in order to comply with the holdings of this court. It is thought that there is quite a difference between this present case and the majority opinion in the Gragg case, supra. One can kick only with one's foot and only stomp therewith, and the overt act charged is plainly set forth (not merely a legal conclusion)—so plainly that Art. 398, C. C. P., can be easily invoked in the event another attempt should be had to indict for causing the death of Mrs. McHenry by the act of appellant in kicking and stomping her to death.

For an exhaustive discussion of the allegation in an indictment relative to the manner and means causing the death of the deceased, we are cited by appellant and call attention to the opinion of Judge Christian in the case of McCullough v. State, 137 Tex. Cr. R. 577, 132 S. W. (2d) 112 (116), where the rule is laid down and sustained by authorities that there is no variance, and the proof is sufficient if it shows that the weapon or method charged in the indictment and the one shown by the proof are of the same nature and character. This was the common law rule and has been consistently followed in this state, prior to, as well as after, the enactment of Art. 398, C. C. P.

It is believed that the majority opinion in the Gragg case, supra, is not in conflict herewith. It will be observed that in such case the majority held that there was no overt act alleged

upon the part of the accused, but it was a mere conclusion and that was that he drowned the unfortunate woman. It was not alleged how such drowning was done, but left to conjecture the manner and method thereof. Not so, however, in the present case. The death herein was caused by "kicking and stomping", necessarily employing therein the use of one's feet.

Not only is the word "stomp" a variation of the word "stamp", a word of common usage meaning a thrust downward with a foot, but there is found in the indictment an allegation that death was caused by kicking, and either allegation, or both, can be taken into consideration in determining the correspondence between such allegation and the proof. In other words, proof of either would be sufficient correspondence, it not being necessary that all the means alleged be proven (Medina v. State, 49 S. W. 380; 22 Tex. Jur. p. 624, sec. 123), provided any of the different methods alleged could have produced the result. See also Burt v. State, 38 Tex. Cr. R. 397, 40 S. W. 1000, in which case it was held by Judge Hurt as follows:

"Where there is doubt about how the death was produced, it is well to put every means suggested by proof in the indictment; and, if proof be made of one of the means, it is unnecessary to prove them all."

We sustained an indictment in the case of Black v. State, 137 Tex. Cr. R. 173, 128 S. W. (2d) 406, alleging that the accused killed Marvin Dale Noblitt by "shoving him from a cliff." It will be noted that in such allegation it is not stated how or with what the accused did this shoving. It could have been done with the hands or the feet or the body or with an inanimate object, none of which were alleged, and did not seem necessary to the sufficiency of the indictment. I think this present allegation is much more specific than "shoving him from a cliff." I perceive no material distinction between the principle involved in this indictment and the one in the Black case, supra.

We are of the opinion that the indictment in the present instance sets out with the certainly required by the statute and decisions of this state the means, the method and manner whereby it is alleged that appellant took the life of Mrs. McHenry.

The facts gathered from appellant's confession show that he contacted Mrs. McHenry at Chickasha in the State of Oklahoma and obtained a ride in a small car which belonged to her

and which she was driving. They went to different towns in Oklahoma, Mrs. McHenry furnishing the gas and oil and appellant doing much of the driving. They visited appellant's brother who spoke to Mrs. McHenry, and he told appellant that if he cóuld get this car, they could take a trip. Appellant promised his brother that he would try to obtain the car. Appellant and Mrs. McHenry then started toward Dallas, the lady telling him that she was going to Dallas to collect some $700.00 in money owing to her by relatives. They finally arrived in Dallas near dusk on March 28, 1946. Appellant was driving the car. They turned off at Turtle Creek Boulevard, drove around to Industrial Boulevard near Trinity Farm at a railroad track, where he stopped and told her to get out of the car; that he wanted the papers; that he and his brother were going to travel together, and that they had no use for her. She said that she had paid for the car; that it was hers, and said, "You ain't gonna get it", and he replied, "Yes, I am." She got out with an old wrench and hit at him. He ducked and kicked her legs out from under her. "Then I kicked her in the mouth with my shoe heel. I think I kicked her three times around the face and head. I left her lying at the side of the road."

On the following morning thereafter her body was found near death, and she was taken to a hospital to be treated for her injuries. She had a compound fracture of her nose across the bridge into the cavity of the nose, a fracture of both upper and lower jaw, and spinal fluid was coming out of her ear. She was breathing with great difficulty and died on account of these injuries some five days thereafter.

Appellant was soon arrested for this offense and made a confession, none of the statements therein being challenged save the fact of his age, which he stated therein to be 17 years. The defense of insanity was interposed for him, and evidence was heard thereon. The trial court submitted such defense to the jury under an appropriate charge.

Bills of Exception Nos. 1, 2, 3 and 4 all relate to allowing certain witnesses to testify that they had recently observed appellant in his actions, speech and conduct, and that from such observations they had formed the opinion that he was of sound mind. The witnesses not being experts on the question of insanity, their testimony was objected to because they were non-experts and not shown to be sufficiently qualified to testify as to the condition of appellant touching his sanity. It is shown,

however, that there was a certain degree of association and constant contact between these witnesses and appellant, the amount of which contact would doubtless affect only the weight of the testimony rather than its admissibility. We think this testimony was admissible under the doctrine summarized in 24 Tex. Jur. p. 425, sec. 42, as follows:

"A witness need not be an expert in mental diseases in order to be competent to express an opinion, based on personal observation, as to the mental condition of another. On the contrary, it is well settled that an ordinary witness may, after having given a description of the acts, words and demeanor of the person whose mental condition is in issue, state his conclusion as to the sanity or insanity of such person. There seems to be no practical distinction between testimony that the witness has never seen or heard anything in the words, looks or acts of another person to indicate that he is of unsound mind or is abnormal, and testimony that in his opinion, based on his observation, the party is of sound mind."

This text is supported by a large array of cited cases, as well as Langhorn v. State, 105 Tex. Cr. R. 470; Shields v. State, 104 Tex. Cr. R. 253, 283 S. W. 844; Bartlett v. State, 119 Tex. Cr. R. 546, 44 S. W. (2d) 714; Oakley v. State, 125 Tex. Cr. R. 258, 68 S. W. (2d) 204; Arnold v. State, 79 S. W. (2d) 130.

It is also the doctrine laid down in this court that a lay witness testifying to the insanity of an accused must first give the facts upon which his opinion is based; not so, however, when the witness merely testifies that he has observed the accused and found nothing abnormal in his conduct. We do not think any error is shown in such bills.

In his motion for a new trial, it was attempted to be shown by testimony of two sisters of appellant that he was born in the last of June or the first part of July, 1929, and therefore, he was but sixteen years of age on March 27, 1946. This matter was contested upon the part of the State by the introduction of a certain statement made by one of these sisters before the grand jury wherein she gave the time of appellant's birth as June 13, 1928; and again by the introduction of a birth certificate of a male child born to Mrs. E. D. Northern on June 13, 1928, and made by Glenn R. Walker, M. D., at the Charity Hospital in Shreveport, Louisiana, on July 1, 1928. The trial court evidently found from this testimony, as well as from appellant's statement, that he was 17 years of age at the time of the commission of this offense.

I think there was no error shown in the trial hereof, and while the penalty is a harsh one, the crime itself bears evidence of appellant's reckless disregard of human rights and an evidently formed intent to take this unfortunate lady's life and possess himself of her property in order to satisfy his personal desires.

Thus believing, I respectfully enter my dissent from the holding of my brethren.

### ON STATE'S MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

The State in large measure predicates its motion for rehearing on the proposition that the court should take judicial notice that the kicking and stomping was bound to be with the feet. Art. 411 C. C. P.

In holding the indictment bad because there was no averment that deceased was kicked and stomped "with the feet" this court has announced no new doctrine. When this State was a Republic, in Bush v. Republic of Texas, Vol. 1 Tex. App. p. 454, decided in 1845, the appellate court as then constituted announced that an "indictment should allege the facts by averments direct, positive and certain, and not by way of argument and inference." This holding, with approval of the exact language quoted in most of the cases, has been followed in State v. Powell, 28 Tex. 627, decided in 1866; State v. Smith, 1 Tex. App. 620, decided in 1877; White v. State, 3 Tex. App. 605, decided in 1878; Moore v. State, 7 Tex. App. 608, decided in 1880; Houston v. State, 13 Tex. App. 595, decided in 1883; Thompson v. State, 16 Tex. App. 159, decided in 1884; McQuerry v. State, 40 Tex. Cr. Rep. 571, decided in 1899; West v. State, 40 Tex. Cr. R. 575, decided in 1899; Bradford v. State, 40 Tex. Cr. R. 632, decided in 1899. In principle, if not by direct use of the language in Bush v. The Republic of Texas, (supra) the holding has been adhered to down to the present time. It is clear that in the present indictment there is no direct and positive averment that the injuries were inflicted with the feet, but must be supplied by argument and inference that under the circumstances alleged it necessarily follows that it was bound to be with the feet. In other words, the effort to sustain the present indictment leads to the proposition that if it takes just a little argument or slight inference to supply the omission the indictment should be held good; on the other

hand, if it takes considerable argument or strong inference to supply the omission the indictment should be held bad. It takes no argument or inference either to demonstrate that such a proposition is ridiculous, and would lead to such looseness and uncertainty in criminal pleading that it would amount to no rule which the courts might follow.

It is unfortunate that the representatives of the State who drew the indictment in the present case overlooked the principle announced in the cases cited herein.

Football and baseball must be played according to the rules of the game. Likewise, criminal cases must be instituted and tried according to accepted rules of procedure, and these rules cannot be varied to satisfy the clamor of those who demand their relaxation in cases where the facts arouse popular indignation.

The State's motion for rehearing is overruled.