## STEVE BORSKI V. STATE.

No. 24549. December 21, 1949.

*Leo Darley*, of Uvalde, for appellant.

*George P. Blackburn*, State's Attorney, Austin, for the state.

KRUEGER, Judge.

Appellant was convicted of the offense of bigamy, and his

punishment was assessed at confinement in the state penitentiary for a period of two years.

Appellant's first complaint relates to the court's action in declining to sustain his motion to quash the indictment. The first count of the indictment upon which the court submitted the case to the jury seems to have been drawn in the language of Art. 490, Vernon's Ann. P. C. Moreover, this count is in conformity with Wilson's Texas Criminal Forms and is deemed sufficient to charge the offense. Consequently the conviction rests on the first count of the indictment which charged that on or about the 22nd day of November, 1948, he, the said Steve Borski, did in the State of Coahuila, in the Republic of Mexico, unlawfully marry Violet Tracy; that at said time the said Steve Borski had a former wife, to-wit: Merle Majorie Goebels Borski, then and there living; that thereafter, on the 24th day of November, 1949, the said Steve Borski and the said Violet Tracy lived and cohabitated together as man and wife in Uvalde County, Texas.

Does the state's evidence support and sustain the allegations? We do not think so. The state offered no documentory evidence showing that a marriage was performed in Mexico. There is, however, a document in the Spanish language brought forward as an exhibit, which is not accompanied by a translation thereof into the English language, nor is there any evidence to show what it purports to be, neither does it appear to have been properly authenticated as provided by 28 U. S. C. A. sec. 1741. Therefore, we cannot consider the same.

Violet Tracy, with whom the alleged bigamous marriage with appellant was charged to have been performed, testified, in substance, as follows: "On the night of November 22, 1948, I met Steve in a beer joint known as Red's Place where we drank some beer. From Red's Place we went to Shadowland and drank some more beer, and Steve acted like he was intoxicated. From there we went to Del Rio and then into Mexico. We went to a cafe where we talked to some one about getting married and he said he could take us to a man that marries people. We went to a house, I really do not have any idea whether the man we went to see had any authority to marry us. Steve was drunk. It was about 12:30 in the morning when we went to this house. This man charged us $25. Well, he didn't do nothing, he just had some papers. He said some words in Spanish. I do not know what he said. I do not know whether he performed a ceremony or not, I guess he did. I don't know whether

he had any authority to marry anybody. I don't have a marriage certificate. He told us it was illegal to marry in the middle of the night. He said it was supposed to close at 8 P. M. I don't know what the marriage laws are in Mexico. I have no idea whether we got married over there or not. I very definitely thought I was married to him. In going through the ceremony Steve was requested to sign a book besides a paper. He had to sign three times. Steve called me his wife." It appears from the record that they lived together in a tourist cabin in the town of Uvalde for about one month when she left him. It also appears from the record that both parties were fairly well under the influence of intoxicating liquor on the night in question.

In the absence of sufficient evidence showing that a marriage ceremony was performed in Mexico uniting appellant and Violet Tracy in the holy bonds of matrimony, we feel constrained to reverse and remand this case.

The judgment of the trial court is reversed and remanded.

Opinion approved by the court.