AFFIRM; Opinion issued December 12, 2012



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-11-01489-CR

### RUDY BONILLA, Appellant

### V.

### THE STATE OF TEXAS, Appellee

On Appeal from the 292nd Judicial District Court
Dallas County, Texas
Trial Court Cause No. F11-00598-V

# OPINION

Before Justices Morris, Richter, and Murphy
Opinion By Justice Morris

In this appeal following a conviction for capital murder, Rudy Bonilla challenges the legal sufficiency of the evidence supporting the jury's finding that he intentionally caused the death of the deceased, Kimheng Lay. In addition, appellant argues the trial court violated the First Amendment by conducting a closed pre-trial hearing and committed reversible error when it overruled appellant's objection to a portion of the prosecutor's closing argument. Concluding there is no merit to appellant's contentions, we affirm the trial court's judgment.

FACTUAL BACKGROUND

Kimheng Lay owned a convenience store in northwest Dallas. On the evening of October 11, 2009, Lay was working in the store with his wife's cousin, Kimleang Herndon. The activities

in the store that night were recorded by several security cameras. At approximately 10:53 p.m., a man later identified as appellant entered the store. Appellant walked toward the back of the store, away from the counter where Lay was working. Herndon testified that appellant walked up to her, held up a gun, and told her to go to the cash registers and "get the money." Appellant and Herndon then walked to the counter where Lay was helping a customer named Anthony McCoy.

McCoy testified that appellant and Herndon walked up to the counter and appellant told McCoy to put up his hands. Appellant then told Lay to open the cash register. As Lay was getting the money from one of the cash registers, appellant stated that it "wasn't enough" and Lay opened the second cash register near the front door. Lay gave appellant the money and appellant stuffed it into his pockets. As this was occurring, McCoy's friend Steven Price walked into the store.

Price testified that as he walked into the store, appellant came out from behind the counter and began walking toward the front door. While appellant was walking toward the door, Lay pulled a gun out of the waistband of his pants. Lay then pulled the gun's slide back to chamber a round, pointed the gun at appellant, and shot him in the leg. Price heard appellant say "Aw, hell no," and saw him fall to the floor. McCoy heard appellant say "You shot me," followed by another gunshot. Price and McCoy ran down the aisle behind them and Price testified he heard "a whole bunch of shooting." Price estimated he heard five or more rounds being fired but he did not know which gun the shots came from.

One of the video recordings from the security cameras shows a view from behind the counter toward the front door. The recording shows Lay pulling a gun out of his waistband and walking behind the counter toward the second cash register and the front door. When he reaches the end of counter, Lay leans over from behind a potted plant and fires the gun at appellant who appears to be bending over. Appellant then drops out of view on the far side of the counter while Lay moves to

–2–

the other side of the plant. A second video recording shows a view from the side of the store looking at the second cash register and the front door. This recording shows Lay firing his gun at appellant and appellant falling to the ground onto his back in front of the door. As appellant gets up from the floor, his right arm is outstretched toward Lay and a gun can be seen in his right hand. Lay drops out of view behind the counter while appellant continues to get up. The recording from behind the counter shows items being blown off the top of the counter in front of Lay as Lay falls quickly into a crouching position before rolling backward onto the floor. The second recording then shows appellant lean forward on the counter, look toward Lay, and move toward the door. Appellant proceeds to fall through the door and crawl away.

The gun used by appellant on the night of the shooting was never recovered. A .45 caliber pistol was found under Lay's body and two spent .45 caliber cartridge casings were found in the store. Reed Quinton, a medical examiner, testified that Lay sustained two gunshot wounds. According to Quinton, one bullet entered at the inner corner of Lay's left eye and exited from the back of his head. The second gunshot wound was on the front of Lay's right forearm. Quinton testified it was "highly unlikely" that the same bullet caused both wounds. A bullet was recovered during the autopsy and a firearms expert testified that it was consistent with a .38 or .357 caliber gun.

Based on information from an informant, Appellant was arrested several days after the shooting and charged with the offense of capital murder. Specifically, the indictment alleged that appellant,

> did unlawfully then and there intentionally cause the death of KIMHENG LAY, an individual hereinafter called the deceased, by SHOOTING THE DECEASED WITH A FIREARM, A DEADLY WEAPON, and [appellant] was then and there in the course of committing and attempting to commit the offense of ROBBERY of said deceased.

Appellant was tried before a jury and, after hearing and viewing the evidence, the jury found him guilty as charged and sentenced him to life in prison. Appellant now brings this appeal.

## DISCUSSION

In his first issue on appeal, appellant contends the evidence is legally insufficient to support his conviction for the offense of capital murder because the state failed to prove that he intentionally caused Lay's death. Appellant argues the evidence shows that Lay's death was the unintended result of his being shot by Lay. Appellant suggests that his gun inadvertently discharged either while he was falling after being shot or while he was rolling on the floor.

In reviewing a challenge to the legal sufficiency of the evidence, we examine the evidence to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. See *Vodochodsky v. State*, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). We review all the evidence in the light most favorable to the verdict and assume the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. See *Rollerson v. State*, 227 S.W.3d 718, 724 (Tex. Crim. App. 2007).

Intent is most often proven through the circumstantial evidence surrounding the crime. *See Sholars v. State*, 312 S.W.3d 694, 703 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). Intent to kill may be inferred from the use of a deadly weapon unless it would not be reasonable to infer that death or serious bodily injury could result from the use of the weapon. See *Ross v. State*, 861 S.W.2d 870, 873 (Tex. Crim. App. 1992). If a deadly weapon is used in a deadly manner, the inference is almost conclusive that the defendant intended to kill. *See Godsey v. State*, 719 S.W.2d 578, 581 (Tex. Crim. App. 1986).

In this case, the evidence showed that appellant went into the convenience store carrying a

loaded gun and that he pointed the gun at various people in the store during the course of the robbery. One of the video recordings shows that after appellant was shot, he got up off the ground with his right arm outstretched, pointing the gun in appellant's direction. It was as appellant's arm was outstretched toward Lay that Lay fell to the ground, having been shot. An autopsy showed that Lay was shot in both the head as well as the arm and that it was "highly unlikely" that one bullet caused both injuries. This shows that appellant fired at least two bullets in appellant's direction. Based on this evidence, a rational trier of fact could conclude beyond a reasonable doubt that appellant intended to kill Lay and that Lay's death was not the result of appellant's gun inadvertently discharging. We resolve appellant's first issue against him.

In his second issue, appellant contends the trial court judge violated the First Amendment to the United States Constitution when he cleared the courtroom during a pre-trial hearing. The record shows that during the pre-trial proceedings appellant requested to make a statement on the record, outside the presence and hearing of others, pertaining to his mental capacity and defense strategy. The trial judge granted appellant's request and had all the spectators, with the exception of appellant's mother, removed from the courtroom. Appellant now contends that this action violated the right of the public and press to access to criminal trials under the First Amendment.

We first note that appellant is not contending that the trial court's action violated his Sixth Amendment right to a public trial. *See* U.S. CONST. amend. VI. Appellant concedes that this constitutional right may be waived or that he may be estopped from raising the issue on appeal through the doctrine of "invited error." *See Prytash v. State*, 3 S.W.3d 522, 531 (Tex. Crim. App. 2009) (if party affirmatively seeks an action by trial court, he cannot later contend the action was error). Rather, appellant brings his challenge solely under the First Amendment right of access to criminal trials. *See Globe Newspaper Co. v. Superior Court for Norfolk Cnty.*, 457 U.S. 596, 604

(1982). Appellant asserts that he could not have waived this right because it protects others, including individual citizens and the press, and, therefore, his actions could not forfeit their right to be present at his trial. This argument, however, begs the question of appellant's standing to assert the challenge.

For a party to challenge an action, it is a fundamental requirement that he have standing to assert the challenge. *See Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982). The United States Supreme Court has held that "standing" requires a party to allege (1) a personal injury in fact, (2) a violation of his own rights, not those of a third party, (3) that the injury falls within the zone of interests protected by the constitutional guarantee involved, (4) that the injury is traceable to the challenged act, and (5) that the courts can grant redress for the injury. *See id.*; *see also In re Houston Chronicle Publ'g Co.*, 64 S.W.3d 103, 106 (Tex. App.—Houston [14th Dist.] 2001, no pet.). Accordingly, for appellant to have standing to assert a First Amendment challenge to the trial court's action of clearing the courtroom, he must show that the action injured him personally and constituted a violation of his rights and interests under the First Amendment.

The rights and interests protected by the First Amendment involve the free discussion of governmental affairs and the ability of individual citizens to effectively participate in and contribute to our system of government. *See Globe Newspaper*, 457 U.S. at 604. Appellant has made no showing that the trial court's action of clearing the courtroom for a pre-trial hearing caused him any injury or that it had any effect on his right to discuss, participate in, or contribute to governmental affairs. We conclude, therefore, that appellant lacks standing to challenge the trial court's action on the ground that it violated the First Amendment. We resolve appellant's second issue against him.

Finally, in his third issue, appellant contends it was reversible error for the trial court to

overrule his objection to a portion of the prosecutor's closing argument because the argument injected a new, harmful fact before the jury that was not a reasonable deduction from the evidence. The argument about which appellant complains involved the discussion of several photographs taken at the scene of the shooting. In discussing one of the still photos taken from the security camera recordings the prosecutor asked, "Can you see all those white particles that have now appeared in this area, like an explosion, as if the evidence would show that a third bullet came through and blew up those spoons [on the counter?]" At that point, appellant objected stating the argument was outside the record and that there had been no testimony about a third bullet. The trial court overruled the objection. The prosecutor then went on to say, "It is a reasonable deduction from the evidence, ladies and gentlemen, that that is a third bullet coming through, blowing up that area of the counter. There's more particles, and you can follow those particles all the way down to the ground after Mr. Lay and his injuries are below the counter." Appellant contends the prosecutor's suggestion that he fired a third bullet was harmful because, if true, this fact would make it less likely that his gun discharged inadvertently.

Proper jury argument falls into one of four categories: (1) summation of the evidence, (2) reasonable deductions from the evidence, (3) answer to the argument of opposing counsel, and (4) plea for law enforcement. *See Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). The Texas Court of Criminal Appeals has consistently held that counsel may, in his final argument, "draw from the facts in evidence all inferences that are reasonable, fair, and legitimate and that he has wide latitude without limitation in this respect so long as the argument is supported by the evidence and offered in good faith." *See Vaughn v. State*, 607 S.W.2d 914, 922–23 (Tex. Crim. App. [Panel Op.] 1980).

The argument at issue was the prosecutor's interpretation of the photographic evidence that

was before the jury. His opinion that appellant fired a third bullet was supported not only by the photographs, but also by the fact that only two cartridge casings from Lay's gun were recovered and Price testified he heard five or more gunshots while he was in the store. Although appellant offers alternative explanations for what the evidence shows, these alternatives do not render the prosecutor's interpretation of the evidence unreasonable or suggest that the argument was made in bad faith. The jurors heard the evidence and viewed the photographs along with the prosecutor and were fully capable of drawing their own conclusions, including ones that were different from the prosecutor's. *Id.* at 923. We conclude, therefore, that the prosecutor's statements fell within the permissible scope of jury argument. We resolve appellant's third issue against him

We affirm the trial court's judgment.


JOSEPH B. MORRIS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
111489F.U05

-8-



# Court of Appeals
## Fifth District of Texas at Dallas

## **JUDGMENT**

RUDY BONILLA, Appellant

No. 05-11-01489-CR      V.

THE STATE OF TEXAS, Appellee

Appeal from the 292nd Judicial District
Court of Dallas County, Texas. (Tr.Ct.No.
F11-00598-V).
Opinion delivered by Justice Morris,
Justices Richter and Murphy participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered December 12, 2012.

JOSEPH B. MORRIS
JUSTICE