COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS



PATRICIA BOGGS HORAN,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee.
§


 


§


 


§


 


§


 


§


 


 §





No. 08-07-00222-CR




Appeal from the



346th District Court



of El Paso County, Texas



(TC# 20040D05142)


O P I N I O N

 Patricia Boggs Horan (Appellant or Horan) was convicted of theft of property with a value
of $1,500 or more, but less than $20,000. Horan was sentenced to a five-year suspended sentence. 
Appellant was placed on community supervision for five years and ordered to pay $223 in court costs
and $16,770 in restitution. She now appeals her conviction. For the reasons below, we affirm the
judgment of the trial court.

I. FACTUAL BACKGROUND

 Horan was convicted of stealing an aggregated amount of $1,500 or more, but less than
$20,000 from Angela Ebert, a British citizen living in Hamburg, Germany. Horan became
acquainted with Ebert through Horan's husband, Robin Carlson. Horan and Ebert then began a
telephone friendship in 1998. In July 2002, Horan invited Ebert and her daughter to Horan's home
in El Paso, Texas. Ebert and her daughter came to El Paso on July 4, 2002.

 Ebert brought $25,000 with her, which she planned to place in a United States bank. Horan
suggested that Ebert open an account at the Fort Bliss Federal Credit Union (FBFCU) (now First
Light Federal Credit Union (FLFCU )). On July 8, 2002, the Carlsons took Ebert to FBFCU where
Ebert then opened an account with the $25,000. Ebert gave the bank Horan's home address as the
mailing address for this new account. The bank suggested that Ebert divide the money into five sub-accounts, which included a checking account, a savings account, a money-market account, and two
share certificates. Ebert divided the money as follows: $15,000 into the money-market account,
$5,000 in each of the share certificate accounts, and $463 in the checking account. Approximately
one week later, the bank sent Ebert her PIN for the newly created account. Ebert testified that she
gave Horan the PIN in order to activate the account and later allowed her to use the account to
purchase medicine for Ebert's husband. Ebert testified that the only medicine she received from
Horan was aspirin and ibuprofen. Ebert also testified that she did not give Carlson or any of the
Carlson children the PIN to the account.

 Ebert and her daughter took a trip to Mexico on July 25, 2002, and returned to El Paso on
July 30, 2002. Ebert and her daughter then returned to Germany on August 10, 2002. From July 25,
2002, through October 9, 2002, there were several money transfers made from Ebert's FBFCU
account to Horan's and Carlson's FBFCU joint account. All of these transfers were done over the
telephone, using the credit union's automated voice system. Detective Bruce Campbell from the El
Paso Police Department determined the amount transferred from Ebert's account to the Horan-Carlson joint account totaled $16,770.

 Sergeant Stefan Happ from the El Paso Police Department testified that the transfers made
over the phone, between the two accounts, were considered to be made on Fort Bliss military base
because that is where all of the servers for FBFCU were located. Happ went on to say that he
contacted the White-Collar Unit at the District Attorney's office who informed him that if some
transactions took place at ATMs in Texas, then the State of Texas would have jurisdiction. After
the transfers were made to the Horan-Carlson joint account, the money was retrieved at various
ATMs. The ATMs used were located in El Paso County, at Sunland Park Race Track and Casino,
and at Speaking Rock Casino.

 From June 30, 2005, until December 15, 2005, Horan represented herself during which time
she filed several motions. On December 15, 2005, Kenneth Krohn was appointed to represent
Horan. On October 20, 2006, Mr. Krohn mentioned that he was worried about Horan's mental
stability. Krohn went on to state that Horan suffered from dementia, which she was taking
medication for until 2001. Mr. Krohn asked for a continuance in order to get a psychiatric
evaluation, relating to the court that Horan was often hysterical, and Krohn had just learned that
Horan suffered from a brain disease. The court denied the continuance and noted that the trial court
had personally observed the Appellant when she represented herself, spoke to court staff, filed
letters, and requested transcripts. The court further stated, while Appellant had been difficult, she
did not have a problem communicating. At a hearing on October 24, 2006, Horan went through
direct and cross-examination regarding her competency. The court scheduled the jury trial for
January 19, 2007. On January 12, 2007, Krohn filed a Motion to Appoint Cynthia Rivera, M.D. to
evaluate Horan and assist in her defense. On January 12, 2007, the court's order directing Dr. Rivera
to examine Horan and evaluate her competency to stand trial was filed. Appellant's jury trial began
on June 25, 2007.

II. DISCUSSION

 Appellant presents two issues for review. In Issue No. One, Appellant contends that the
evidence is legally insufficient to establish that Appellant appropriated at least $1,500 in the
territorial jurisdiction of Texas, and that the evidence is legally insufficient to establish that
Appellant appropriated at least $1,500 without the effective consent of Angela Ebert. In Issue No.
Two, Appellant contends that the trial court erred in failing to conduct a competency trial.

A. Legal Sufficiency of the Evidence

 To support a criminal conviction, when the legal sufficiency of the evidence is under review,
we consider all of the evidence in the light most favorable to the verdict. Rollerson v. State, 227
S.W.3d 718, 724 (Tex.Crim.App. 2007) (citing Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S. Ct. 
2781, 2788-89 (1979); Hooper v. State, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007)). Based on the
evidence, and reasonable inferences made from it, we evaluate whether a rational juror could have
found beyond a reasonable doubt that all of the essential elements of the crime were met. Rollerson,
227 S.W.3d at 724.

 In the State's reply to Issue No. One, it contends that jurisdiction is not an element of the
offense and therefore cannot be subject to a legal-sufficiency review, as defined in Jackson. 
However, the Jackson standard is only a minimum legal sufficiency standard. Watson v. State, 204
S.W.3d 404, 412 (Tex.Crim.App. 2006). Regardless of the generally adopted Jackson standard, the
Texas Court of Criminal Appeals has stated that the application of Jackson does not preclude any
other type of review and does not prevent states from using higher standards of review. Clewis v.
State, 922 S.W.2d 126, 132 (Tex.Crim.App. 1996). Reviewing territorial jurisdiction under a legal
sufficiency standard does not in any way fall below the standard set out by Jackson. If anything, it
would be imposing a higher standard of review.

 Furthermore, this Court has already reviewed territorial jurisdiction under the Jackson legal
sufficiency standard in Torres. Torres v. State, 141 S.W.3d 645, 652-54 (Tex.App.-El Paso 2004,
pet. ref'd). The Texas Court of Criminal Appeals has also reviewed territorial jurisdiction under a
Jackson standard in Vaughn. Vaughn v. State, 607 S.W.2d 914, 919-20 (Tex.Crim.App. 1980). In reviewing the legal sufficiency of the evidence, the Court does not resolve any conflict of
fact or assign credibility to the witnesses, as that is a determination for the jury to make. Adelman
v. State, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); Matson v. State, 819 S.W.2d 839, 843
(Tex.Crim.App. 1991). Our duty is only to determine if the findings of the trier of fact are rational
by viewing all of the evidence admitted at trial in a light most favorable to the verdict. Adelman, 828
S.W.2d at 422. The trier of fact is authorized to resolve conflicts in the evidence, evaluate the
credibility of witnesses, and determine the weight of particular evidence. Torres, 141 S.W.3d at 652
(citing Jones v. State, 944 S.W.2d 642, 647 (Tex.Crim.App. 1996)). It is also settled that
"[j]urisdiction may be established by circumstantial evidence." Torres, 141 S.W.3d at 652 (citing 
Vaughn, 607 S.W.2d at 920).

 The Court of Criminal Appeals has yet to decide what specific burden of proof is required
to prove territorial jurisdiction. Torres, 141 S.W.3d at 652-54. The majority of courts have held that
the correct burden is proof beyond a reasonable doubt, while the minority requires only a
preponderance of the evidence. Id. Regardless, we find that the evidence is legally sufficient to
establish territorial jurisdiction in Texas under either burden of proof.

 Texas has territorial jurisdiction over an offense if "either the conduct or a result that is an
element of the offense occurs inside this state." Tex. Penal Code Ann. § 1.04(a)(1)(Vernon 2003). 
The Court of Criminal Appeals held that the language "that is an element of the offense" applies to
both "conduct" and "result." Rodriguez v. State, 146 S.W.3d 674, 675-76 (Tex.Crim.App. 2004). 
 In Texas, a person commits theft if he unlawfully appropriates property with the intent to
deprive the owner of the property. Tex.Penal Code Ann. § 31.03(a)(Vernon Supp. 2008).
Appropriation of property is unlawful if it is without the owner's effective consent. Tex.Penal
Code Ann. § 31.03(b)(1). An owner is a person who has title to property, possession of the
property, whether lawful or not, or a greater right to possession of the property than the actor. 
Tex.Penal Code Ann. § 1.07(a)(35)(A)(Vernon Supp. 2008). A person acts intentionally, or with
intent, with respect to the nature of her conduct, or a result of her conduct, when it is her conscious
objective or desire to engage in the conduct or cause the result. Tex.Penal Code Ann. § 6.03(a)
(Vernon 2003).

 Horan was convicted of theft through one scheme and continuing course of conduct. Texas
has jurisdiction over the offense if either the conduct or a result, that is an element of the offense,
occurs in Texas. Tex.Penal Code Ann. § 1.04(a). When viewing the evidence in the "light most
favorable to the verdict," there are several points that could convince a rational juror beyond a
reasonable doubt that Texas had territorial jurisdiction over the crime. The evidence presented at
trial includes the following: (1) Horan lived in El Paso County, Texas during the period of the
alleged offense; (2) Horan spoke frequently with Ebert from her home phone; (3) Horan convinced
Ebert to come and stay with her in El Paso; (4) Horan suggested that Ebert open an account at
FBFCU where Horan had an account; (5) Ebert's PIN and bank statements were mailed to Horan's
address in El Paso; and (6) ATMs used by Horan to access the cash were located in El Paso County. 
With intent being one of the elements of the crime, there is sufficient evidence to establish that the
element of intent could have been formed in El Paso County, Texas. Moreover, several cash
withdrawals of the transferred money occurred at ATMs in El Paso, Texas. The evidence is legally
sufficient to convince a rational juror that either the element of appropriation, or the element of intent
to deprive occurred in El Paso, Texas.

 Appellant further contends that the evidence is legally insufficient to prove that the property
was appropriated without the effective consent of Angela Ebert. Effective consent includes consent
by a person legally authorized to act for the owner. Tex.Penal Code Ann. § 31.01(3)(Vernon
Supp. 2008). Consent is not effective if induced by deception or coercion. Tex.Penal Code Ann.
§ 31.01(3)(A).

 Again, viewing the evidence in the light most favorable to the verdict, there is sufficient
evidence to convince a juror that the property in question was appropriated without the effective
consent of Angela Ebert. The relevant evidence presented at trial includes the following: (1) Ebert's
testimony that she had given Horan permission to use the money only for the purchase of medicine
for Ebert's sick husband; (2) Ebert's testimony that the only medication she received from Horan
was aspirin and ibuprofen; (3) Ebert's testimony that she never gave Horan permission to transfer
money from her account to Appellant's account; (4) State's Exhibits Two and Three showing that
a large portion of the money was taken out at Speaking Rock Casino's ATM machine and Sunland
Park Casino's machine; (5) Ebert's testimony that once confronted, Horan promised to pay the
transferred money back; (6) Ebert's testimony that she had not learned that the money was
transferred out until she spoke with a credit union representative in March 2003; and (7) Bank
records showing that Ebert's account statements were sent to Horan's address until April 2003.

 Because the evidence is legally sufficient to establish jurisdiction and appropriation without
effective consent, Issue No. One is overruled.

B. Failure to Conduct a Competency Trial

 In her second issue, Appellant contends that the trial court erred in failing to conduct a
competency trial. Later, in Appellant's argument she then states that the trial court erred by failing
to conduct a competency inquiry as required by the Texas Code of Criminal Procedure Article 46.02. 
The relevant law that applies in this case is Chapter 46B of the Texas Code of Criminal Procedure. 
Tex.Code Crim.Proc.Ann. ch.46B (Vernon 2006). Article 46.02 that Appellant cites was repealed
effective January 1, 2004. Act of May 14, 2003, 78th Leg., R.S. ch. 35, § 15, 2003 Tex. Gen. Laws
57, 72. Whether Appellant is contending that the trial court erred in failing to conduct a competency
trial, or failed to conduct an informal inquiry as required under Article 46B.004(c), the issue is
overruled. Tex.Code Crim. Proc. Ann. art. 46B.004(c)(Vernon 2006). We hold that the trial court
did not err in failing to conduct a competency trial and that an adequate informal inquiry was
conducted.

 The trial court's decision not to hold a competency hearing is reviewed under an abuse of
discretion standard. Moore v. State, 999 S.W.2d 385, 393 (Tex.Crim.App. 1999). The test for abuse
of discretion "'is not whether, in the opinion of the reviewing court, the facts present an appropriate
case for the trial court's action; rather, it is a question of whether the trial court acted without
reference to any guiding rules or principles, and the mere fact that a trial court may decide a matter
within its discretionary authority differently than an appellate court does not demonstrate such an
abuse.'" Howell v. State, 175 S.W.3d 786, 792 (Tex.Crim.App. 2005)(quoting Randon v. State, 107
S.W.3d 646, 648 (Tex.App.-Texarkana 2003, no pet.)).

 A person is presumed competent to stand trial and will be deemed competent to stand trial
unless proved to be incompetent by a preponderance of the evidence. Tex.Code Crim.Proc.Ann.
art. 46B.003(b)(Vernon 2006). A defendant is incompetent to stand trial if he does not have
sufficient present ability to consult with his lawyer with a reasonable degree of rational
understanding, or he lacks a rational as well as factual understanding of the proceedings against him.
Tex.Code Crim.Proc.Ann. art. 46B.003(a). Either party or the trial court may suggest that a
defendant is incompetent. If evidence suggesting that the defendant is incompetent to stand trial
comes to the attention of the trial court, it shall conduct an informal inquiry into whether there is
some evidence from any source that would support a finding that the defendant is incompetent to
stand trial. Tex.Code Crim.Proc.Ann. art. 46B.004. If after an informal inquiry the trial court
determines that evidence exists to support a finding of incompetency, it shall order an examination
by an expert to determine whether the defendant is competent to stand trial. Tex.Code Crim. Proc.
Ann. art. 46B.005(a).

 Here, the trial court first observed the defendant's capability to not only understand the
proceedings against her, but to represent herself during two pretrial conferences. The defendant filed
several motions on her own, and brought her own oral motion questioning the State's jurisdiction
on the matter. Despite the lack of evidence suggesting incompetency, the trial court held a hearing
and allowed direct and cross-examination of the defendant which was specifically targeted at
determining the defendant's competency to stand trial. Lastly, the trial court ordered that the
defendant submit to a mental health examination for the purpose of determining her competency to
stand trial. The fact that the trial court ordered a psychiatric evaluation does not constitute evidence
that the defendant is incompetent. Criswell v. State, 278 S.W.3d 455, 459 (Tex.App.-Houston [14th
Dist.] 2009, no pet.). The Psychiatric Evaluation report dated January 14, 2007 and submitted to the
court by the appointed psychiatrist found Horan "competent to stand trial." (1) There being no evidence
of incompetency before the court, it was not required that a competency hearing be held and thus the
court did not err in failing to do so. Tex.Code Crim.Proc.Ann. art. 46B.004. Appellant's second
issue is overruled.

III. CONCLUSION

 For the forgoing reasons, we affirm the judgment of the trial court.


 GUADALUPE RIVERA, Justice


July 1, 2009


Before Chew, C.J., McClure, and Rivera, JJ.


(Do Not Publish)

1. In Appellant's brief, Appellant asserts that the Psychiatric Evaluation report is no where to be found. The
State responded by supplementing the record with its copy of the report. Appellant wrote a letter objecting to the
supplementation on February 27, 2009. This Court overruled the objection the same day.