COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS




PATRICIA BOGGS HORAN,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee.
§


 


§


 


§


 


§


 


§


 


 §





No. 08-07-00222-CR




Appeal from the



346th District Court



of El Paso County, Texas



(TC# 20040D05142)



O P I N I O N

 The opinion issued by this Court on July 1, 2009 is withdrawn and the following is the
opinion of the Court.

 Patricia Boggs Horan was convicted of theft of property with a value of $1,500 or more, but
less than $20,000. Horan was sentenced to a five-year suspended sentence. Appellant was placed
on community supervision for five years and ordered to pay $223 in court costs and $16,770 in
restitution. She now appeals her conviction. For the reasons below, we affirm the judgment of the
trial court.

I. FACTUAL BACKGROUND

 Horan was convicted of stealing an aggregated amount of $1,500 or more, but less than
$20,000 from Angela Ebert, a British citizen living in Hamburg, Germany. Horan became
acquainted with Ebert through Horan's husband, Robin Carlson. Horan and Ebert then began a
telephone friendship in 1998. In July 2002, Horan invited Ebert and her daughter to Horan's home
in El Paso, Texas. Ebert and her daughter came to El Paso on July 4, 2002.

 Ebert brought $25,000 with her, which she planned to place in a United States bank. Horan
suggested that Ebert open an account at the Fort Bliss Federal Credit Union (FBFCU) (now First
Light Federal Credit Union (FLFCU )). On July 8, 2002, the Carlsons took Ebert to FBFCU where
Ebert then opened an account with the $25,000. Ebert gave the bank Horan's home address as the
mailing address for this new account. The bank suggested that Ebert divide the money into five sub-accounts, which included a checking account, a savings account, a money-market account, and two
share certificates. Ebert divided the money as follows: $15,000 into the money-market account,
$5,000 in each of the share certificate accounts, and $463 in the checking account. Approximately
one week later, the bank sent Ebert her PIN for the newly created account. Ebert testified that she
gave Horan the PIN in order to activate the account and later allowed her to use the account to
purchase medicine for Ebert's husband. Ebert testified that the only medicine she received from
Horan was aspirin and ibuprofen. Ebert also testified that she did not give Carlson or any of the
Carlson children the PIN to the account.

 Ebert and her daughter then returned to Germany on August 10, 2002. From July 25, 2002,
through October 9, 2002, there were several money transfers made from Ebert's FBFCU account to
Horan's and Carlson's FBFCU joint account. All of these transfers were done over the telephone,
using the credit union's automated voice system. Detective Bruce Campbell from the El Paso Police
Department determined the amount transferred from Ebert's account to the Horan-Carlson joint
account totaled $16,770.

 Sergeant Stefan Happ from the El Paso Police Department testified that the transfers made
over the phone, between the two accounts, were considered to be made on Fort Bliss military base
because that is where all of the servers for FBFCU were located. Happ went on to say that he
contacted the White-Collar Unit at the District Attorney's office who informed him that if some
transactions took place at ATMs in Texas, then the State of Texas would have jurisdiction. After
the transfers were made to the Horan-Carlson joint account, the money was retrieved at various
ATMs located in El Paso County, at Sunland Park Race Track and Casino, and at Speaking Rock
Casino.

 Once indicted, Horan represented herself from June 30, 2005, until December 15, 2005, when
Kenneth Krohn was appointed to represent her. On October 20, 2006, Mr. Krohn mentioned that
he was worried about Horan's mental stability and that Horan suffered from dementia. Mr. Krohn
asked for a continuance, and for a psychiatric evaluation. He stated that Horan was often hysterical,
and that she claimed to suffer from a brain disease. The court denied the continuance and noted that
the trial court had personally observed Appellant represent herself, that Horan spoke to court staff,
filed letters, and requested transcripts. The court also noted that while Appellant had been difficult,
she did not have a problem communicating. The court held a hearing on October 24, 2006, at which
Horan went through direct and cross-examination regarding her competency. The case was
scheduled for jury trial to begin on January 19, 2007 and on January 12, 2007, Krohn filed a Motion
to Appoint Cynthia Rivera, M.D. to evaluate Horan for competency and to assist in her defense. On
January 12, 2007, the court ordered Dr. Rivera to conduct a competency evaluation. Appellant's jury
trial began on June 25, 2007.


II. DISCUSSION

 Appellant presents two issues for review. In Issue One, Appellant contends that the evidence
is legally insufficient to establish that Appellant appropriated at least $1,500 in the territorial
jurisdiction of Texas, and that the evidence is legally insufficient to establish that Appellant
appropriated at least $1,500 without the effective consent of Angela Ebert. In Issue Two, Appellant
contends that the trial court erred in failing to conduct a competency trial.

A. Legal Sufficiency of the Evidence

 To support a criminal conviction, when the legal sufficiency of the evidence is under review,
we consider all of the evidence in the light most favorable to the verdict. Rollerson v. State, 227
S.W.3d 718, 724 (Tex.Crim.App. 2007) (citing Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S. Ct. 
2781, 2788-89 (1979); Hooper v. State, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007)). Based on the
evidence, and reasonable inferences made from it, we evaluate whether a rational juror could have
found beyond a reasonable doubt that all of the essential elements of the crime were met. Rollerson,
227 S.W.3d at 724.

 In the State's reply to Issue One, it contends that jurisdiction is not an element of the offense
and therefore cannot be subject to a legal-sufficiency review, as defined in Jackson. However, the
Jackson standard is only a minimum legal sufficiency standard. Watson v. State, 204 S.W.3d 404,
412 (Tex.Crim.App. 2006). Regardless of the generally adopted Jackson standard, the Texas Court
of Criminal Appeals has stated that the application of Jackson does not preclude any other type of
review and does not prevent states from using higher standards of review. Clewis v. State, 922
S.W.2d 126, 132 (Tex.Crim.App. 1996). Reviewing territorial jurisdiction under a legal sufficiency
standard does not in any way fall below the standard set out by Jackson. If anything, it would be
imposing a higher standard of review.

 Furthermore, this Court has already reviewed territorial jurisdiction under the Jackson legal
sufficiency standard in Torres. Torres v. State, 141 S.W.3d 645, 652-54 (Tex.App.-El Paso 2004,
pet. ref'd). The Texas Court of Criminal Appeals has also reviewed territorial jurisdiction under a
Jackson standard in Vaughn. Vaughn v. State, 607 S.W.2d 914, 919-20 (Tex.Crim.App. 1980). In reviewing the legal sufficiency of the evidence, the Court does not resolve any conflict of
fact or assign credibility to the witnesses, as that is a determination for the jury to make. Adelman
v. State, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); Matson v. State, 819 S.W.2d 839, 843
(Tex.Crim.App. 1991). Our duty is only to determine if the findings of the trier of fact are rational
by viewing all of the evidence admitted at trial in a light most favorable to the verdict. Adelman, 828
S.W.2d at 422. The trier of fact is authorized to resolve conflicts in the evidence, evaluate the
credibility of witnesses, and determine the weight of particular evidence. Torres, 141 S.W.3d at 652
(citing Jones v. State, 944 S.W.2d 642, 647 (Tex.Crim.App. 1996)). It is also settled that
"[j]urisdiction may be established by circumstantial evidence." Torres, 141 S.W.3d at 652 (citing 
Vaughn, 607 S.W.2d at 920).

 The Court of Criminal Appeals has yet to decide what specific burden of proof is required
to prove territorial jurisdiction. Torres, 141 S.W.3d at 652-54. The majority of courts have held that
the correct burden is proof beyond a reasonable doubt, while the minority requires only a
preponderance of the evidence. Id. Regardless, we find that the evidence is legally sufficient to
establish territorial jurisdiction in Texas under either burden of proof.

 Texas has territorial jurisdiction over an offense if "either the conduct or a result that is an
element of the offense occurs inside this state." Tex. Penal Code Ann. § 1.04(a)(1)(Vernon 2003). 
The Court of Criminal Appeals held that the language "that is an element of the offense" applies to
both "conduct" and "result." Rodriguez v. State, 146 S.W.3d 674, 675-76 (Tex.Crim.App. 2004). 
 In Texas, a person commits theft if he unlawfully appropriates property with the intent to
deprive the owner of the property. Tex.Penal Code Ann. § 31.03(a)(Vernon Supp. 2008).
Appropriation of property is unlawful if it is without the owner's effective consent. Tex.Penal
Code Ann. § 31.03(b)(1). An owner is a person who has title to property, possession of the
property, whether lawful or not, or a greater right to possession of the property than the actor. 
Tex.Penal Code Ann. § 1.07(a)(35)(A)(Vernon Supp. 2008). A person acts intentionally, or with
intent, with respect to the nature of her conduct, or a result of her conduct, when it is her conscious
objective or desire to engage in the conduct or cause the result. Tex.Penal Code Ann. § 6.03(a)
(Vernon 2003).

 Horan was convicted of theft through one scheme and continuing course of conduct. Texas
has jurisdiction over the offense if either the conduct or a result, that is an element of the offense,
occurs in Texas. Tex.Penal Code Ann. § 1.04(a). When viewing the evidence in the "light most
favorable to the verdict," there are several points that could convince a rational juror beyond a
reasonable doubt that Texas had territorial jurisdiction over the crime. The evidence presented at
trial includes the following: (1) Horan lived in El Paso County, Texas during the period of the
alleged offense; (2) Horan spoke frequently with Ebert from her home phone; (3) Horan convinced
Ebert to come and stay with her in El Paso; (4) Horan suggested that Ebert open an account at
FBFCU where Horan had an account; (5) Ebert's PIN and bank statements were mailed to Horan's
address in El Paso; and (6) ATMs used by Horan to access the cash were located in El Paso County. 
With intent being one of the elements of the crime, there is sufficient evidence to establish that the
element of intent could have been formed in El Paso County, Texas. Moreover, several cash
withdrawals of the transferred money occurred at ATMs in El Paso, Texas. The evidence is legally
sufficient to convince a rational juror that either the element of appropriation, or the element of intent
to deprive occurred in El Paso, Texas.

 Appellant further contends that the evidence is legally insufficient to prove that the property
was appropriated without the effective consent of Angela Ebert. Effective consent includes consent
by a person legally authorized to act for the owner. Tex.Penal Code Ann. § 31.01(3)(Vernon
Supp. 2008). Consent is not effective if induced by deception or coercion. Tex.Penal Code Ann.
§ 31.01(3)(A).

 Again, viewing the evidence in the light most favorable to the verdict, there is sufficient
evidence to convince a rational juror that the property in question was appropriated without the
effective consent of Angela Ebert. The relevant evidence presented at trial includes the following: 
(1) Ebert's testimony that she had given Horan permission to use the money only for the purchase
of medicine for Ebert's sick husband; (2) Ebert's testimony that the only medication she received
from Horan was aspirin and ibuprofen; (3) Ebert's testimony that she never gave Horan permission
to transfer money from her account to Appellant's account; (4) State's Exhibits Two and Three
showing that a large portion of the money was taken out at Speaking Rock Casino's ATM machine
and Sunland Park Casino's machine; (5) Ebert's testimony that once confronted, Horan promised
to pay the transferred money back; (6) Ebert's testimony that she had not learned that the money was
transferred out until she spoke with a credit union representative in March 2003; and (7) Bank
records showing that Ebert's account statements were sent to Horan's address until April 2003.


 Because the evidence is legally sufficient to establish jurisdiction and appropriation without
effective consent, Issue One is overruled.

B. Failure to Conduct a Competency Trial

 In Issue Two, Appellant contends that the trial court erred in failing to conduct a competency
trial. Later, Appellant argues that the trial court erred by failing to conduct a competency inquiry as
required by the Texas Code of Criminal Procedure Article 46.02. The relevant law that applies in
this case is Chapter 46B of the Texas Code of Criminal Procedure. Tex.Code Crim.Proc.Ann.
ch.46B (Vernon 2006). Article 46.02 that Appellant cites was repealed effective January 1, 2004. 
Act of May 14, 2003, 78th Leg., R.S. ch. 35, § 15, 2003 Tex. Gen. Laws 57, 72. Whether Appellant
is contending that the trial court erred in failing to conduct a competency trial, or failed to conduct
an informal inquiry as required under Article 46B.004(c), the issue is overruled. Tex.Code Crim.
Proc. Ann. art. 46B.004(c)(Vernon 2006). We hold that the trial court did not err in failing to
conduct a competency trial and that an adequate informal inquiry was conducted.

 The trial court's decision not to hold a competency hearing is reviewed under an abuse of
discretion standard. Moore v. State, 999 S.W.2d 385, 393 (Tex.Crim.App. 1999). The test for abuse
of discretion "'is not whether, in the opinion of the reviewing court, the facts present an appropriate
case for the trial court's action; rather, it is a question of whether the trial court acted without
reference to any guiding rules or principles, and the mere fact that a trial court may decide a matter
within its discretionary authority differently than an appellate court does not demonstrate such an
abuse.'" Howell v. State, 175 S.W.3d 786, 792 (Tex.Crim.App. 2005)(quoting Randon v. State, 107
S.W.3d 646, 648 (Tex.App.-Texarkana 2003, no pet.)).

 A person is presumed competent to stand trial and will be deemed competent to stand trial
unless proven to be incompetent by a preponderance of the evidence. Tex.Code Crim.Proc.Ann.
art. 46B.003(b)(Vernon 2006). A defendant is incompetent to stand trial if he does not have
sufficient present ability to consult with his lawyer with a reasonable degree of rational
understanding, or he lacks a rational as well as factual understanding of the proceedings against him.
Tex.Code Crim.Proc.Ann. art. 46B.003(a). The issue of defendant's competence may be raised
by either party or the trial court. If evidence suggesting that the defendant is incompetent to stand
trial comes to the attention of the trial court, it shall conduct an informal inquiry into whether there
is some evidence from any source that would support a finding that the defendant is incompetent to
stand trial. Tex.Code Crim.Proc.Ann. art. 46B.004.

 In Montoya v. State, the Court of Criminal Appeals clarified that to trigger a competency
inquiry:

 Bona fide doubt is still the proper standard for determining whether a trial court
should conduct an inquiry. If a trial judge has a bona fide doubt about the
competency of the defendant, he or she shall conduct an informal inquiry to
determine if there is evidence that would support a finding of incompetence. A bona
fide doubt may exist if the defendant exhibits truly bizarre behavior or has a recent
history of severe mental illness or at least moderate mental retardation.


Montoya v. State, No. PD-0239-08, ___S.W.3d ___, 2009 WL 1873354, at *1, 4 (Tex.Crim.App.
July 1, 2009) (not yet published). If after an informal inquiry the trial court determines that evidence
exists to support a finding of incompetency, it shall order an examination by an expert to determine
whether the defendant is competent to stand trial. Tex.Code Crim.Proc.Ann. art. 46B.005(a).

 We first address Appellant's complaint that the trial court failed to conduct an informal
inquiry. We find that complaint to be moot. The sole purpose for conducting an informal inquiry
is for the court to determine whether there is evidence to support a finding of incompetence; if so,
an examination by an expert is required.

 Here, the trial court ordered an examination by Dr. Cynthia Rivera even though the court
noted that she had observed Horan's ability not only to understand the proceedings against her, but
also to represent herself during two pretrial conferences. The defendant had filed several motions
on her own and brought an oral motion questioning the State's jurisdiction. Although initially the
court felt there was a lack of evidence raising a doubt as to Horan's competence, once defense
counsel expressed a concern about Horan's mental stability, a hearing was held at which direct and
cross-examination of the defendant specifically focused on the defendant's competency to stand trial. 
We find that the court did conduct the informal inquiry. Further once the motion requesting a
psychiatric evaluation was filed, the trial court ordered a mental health examination by an expert. 
The fact that the trial court ordered a psychiatric evaluation does not constitute evidence that the
defendant is incompetent. Criswell v. State, 278 S.W.3d 455, 459 (Tex.App.-Houston [14th Dist.]
2009, no pet.).

 We will now address Appellant's argument that the trial court erred in failing to conduct a
competency trial. Dr. Cynthia Rivera's Psychiatric Evaluation dated January 14, 2007 found Horan
"competent to stand trial." In Appellant's brief, Appellant asserts that the Psychiatric Evaluation is
no where to be found. In response, the State supplemented the record with its copy of the report. 
By letter Appellant raised an objection to the supplementation and that was overruled by this Court. 
Appellant argues that the absence of the report in the file implies that the examination was not
conducted. There is no requirement that the expert report be filed or admitted into evidence as
Appellant asserts. Tex.Code Crim.Proc.Ann. art. 46B.026(a) only required "an expert examining
the defendant shall provide the report on the defendant's competency or incompetency . . . to the
court, the attorney representing the state, and the attorney representing the defendant not later than
the 30th day after the date on which the expert was ordered to examine the defendant . . . ." The fact
that the State had a copy of the report in its file is some indication that Dr. Rivera complied with the
court's order requiring her to submit a copy of the report to the trial court, the prosecuting attorney,
and defendant's attorney. Furthermore, Tex.R.App.P. 34.5(c)(1) allows an appellate court, trial
court, or any party by letter to direct the trial court clerk to prepare, certify, and file in the appellate
court a supplement containing a relevant item that has been omitted from the clerk's record. The
report was properly considered by this Court in its analysis of whether the trial court erred in not
conducting a competency trial. The failure to file the report should not raise an inference that
Appellant's competence was left unresolved by the trial court where there is no requirement that it
be filed. Tex.Code Crim.Proc.Ann. art. 46B.026(a).

 In Montoya, the Court of Criminal Appeals has made it clear that "[t]he changes to the statute
specify that a trial judge's inquiry into a defendant's competence may be informal, rather than the
formal hearing required in the former statute. This allows the trial judge to informally determine
whether the behavior of the defendant during a proceeding indicates a lack of rational
understanding." Montoya, 2009 WL 1873354, at *4.

 We find that it is reasonable that the court acted within its discretionary authority and that
under the guiding principle of Montoya, did not find that the evidence, even excluding the report,
raised a bona fide doubt regarding Horan's understanding of the nature of the proceedings and her
ability to consult with counsel with a reasonable degree of rational understanding. The only evidence
hinting at incompetence comes from Appellant's own testimony and her attorney's observations of
her mental instability, hysteria, and medical accounts. The relevant inquiry is whether that mental
instability interfered with her ability to understand the proceedings or consult with her lawyer. The
evidence before the court was to the contrary.

 It is essential to make a distinction between impairment and incompetence. It is when a
person's mental condition is such that he lacks the capacity to understand the nature of and object
to the proceedings against him, to consult with counsel, and to assist in preparing his defense that
he may not be subject to trial. McDaniel, 98 S.W.3d at 709.

 The trial court observed Appellant's ability to represent herself during two pretrial
conferences, file several motions on her own, and make an oral motion questioning the State's
jurisdiction on the matter. In Grider v. State, 69 S.W.3d 681, 684-85 (Tex.App.-Texarkana 2002,
no pet.), although the evidence showed that the defendant was impaired to some extent by a
psychiatric disorder requiring medication, there was no evidence that such impairment rendered him
incompetent under the proper definition; therefore, the trial court was under no duty to conduct a
separate incompetency trial or hearing. "We cannot ignore the trial court's first-hand factual
assessment of appellant's mental competency. His factual findings, that appellant understood the
nature of the proceedings and assisted his counsel in his defense, are entitled to great deference by
the reviewing court." McDaniel v. State, 98 S.W.3d 704, 713 (Tex.Crim.App. 2003). We find that
the trial court did conduct an informal inquiry and despite the lack of evidence indicating
incompetence, ordered a psychiatric evaluation to determine competence. Further we find that there
being no evidence of incompetency before the court, it was not required to hold a competency trial,
thus the court did not abuse its discretion. Tex.Code Crim.Proc.Ann. art. 46B.004.

 Appellant's second issue is overruled.

III. CONCLUSION

 For the forgoing reasons, we affirm the judgment of the trial court.

 GUADALUPE RIVERA, Justice


September 16, 2009


Before Chew, C.J., McClure, and Rivera, JJ.


(Do Not Publish)